0990

Frank Quale O'NEILL, Appellant v. Ramona Landry O'NEILL, Respondent.

(359 S. E. (2d) 68)

Court of Appeals

*Robert B. Wallace* and *Paul E. Tinkler*, of *Wallace and Tinkler*, Charleston, *for appellant.*

*Robert N. Rosen*, of *Rosen, Rosen and Hagood*, Charleston, *for respondent.*

Heard June 15, 1987.

Decided July 20, 1987.

CURETON, Judge:

In this domestic case the family court granted the wife, Ramona O'Neill, a divorce from the husband, Frank Quale O'Neill, on the ground of adultery and awarded the wife periodic alimony of $1,200.00 per month and $4,500.00 attorney fees. Each party was ordered to pay the creditors listed on their respective financial declarations. The husband appeals the awards of alimony and attorney fees and alleges the judge erred in apportioning the marital debt. We affirm.

The parties married in 1976. At that time, the wife earned $14,000.00 a year and received approximately $700.00 per month alimony from a prior marriage. Except for two brief periods of several months early in the marriage, the wife has not been employed. The husband is a journalist and novelist. His novel, *Agents of Sympathy*, was published in May 1985. At the time of the marriage he had an income of $18,000.00 a year from a residual trust. In 1977, the husband inherited $800,000.00. The couple soon thereafter purchased a $185,000.00 home on Church Street in Charleston with funds from the inheritance and approximately $23,000.00 netted by the wife from the sale of her condominium in

Washington, D. C. The house was purchased in both parties' names but subsequently placed in the wife's name. Soon after purchasing the house, the parties mortgaged it for $150,000.00 and placed the proceeds in the husband's stock investment account. Following the inheritance the couple began an extravagant lifestyle, spending heavily on their home and furnishings, clothes, cars, and trips to Europe. By the time the case was tried in 1986 the entire $800,000.00 was depleted.

The marriage was apparently in difficulty from the beginning. In 1981 the couple separated briefly. In 1982 the husband testified he warned his wife that heavy spending and investment losses were depleting the inheritance. In November 1984 the wife moved to New York City to pursue a business venture importing Irish goods. A second mortgage for $125,000.00 was obtained on the Church Street home. The wife used $88,000.00 of this money to purchase an option on a $385,000.00 apartment in New York City. The remaining $35,000.00 was utilized by the wife for living expenses in New York. The parties planned to sell the Church Street house and rent a farmhouse in New York or Pennsylvania for the husband to occupy while he completed his second novel. In March 1985, however, he wrote the wife in New York requesting a divorce.

The wife's New York business venture never materialized. During the pendency of this action, the option on the apartment came due and, because there were no funds available to exercise it, the $88,000.00 previously paid was lost. The Church Street home finally sold in September 1985 for $375,000.00, substantially less than the parties had anticipated. This action was commenced as a separation action by the husband in June 1985. The wife counterclaimed alleging adultery and other misconduct, and praying for alimony, equitable division and attorney fees. A temporary order awarded the wife the net proceeds from the sale of the marital home in Charleston, approximately $29,000.00 after mortgages and other debts were deducted. The husband filed an amended petition before the final hearing praying for a divorce on one year's separation.

The case was tried in April 1986. The husband admitted at the hearing that he had committed adultery with two per-

sons subsequent to the separation. In an order issued in May 1986 the judge awarded the wife a divorce on the ground of adultery, periodic alimony of $1,200.00 per month, and a $4,500.00 attorney fee. The court further awarded each party the personal property in their possession. Each party was ordered to pay the marital debts listed on their financial declaration, which amounted to $10,600.00 for the wife and approximately $31,000.00 for the husband. The couple owned no real property at the time of the final hearing.

## ALIMONY

The husband argues several reasons why the judge erred in awarding the wife periodic alimony of $1,200.00 per month. We shall consider these arguments briefly.

First, the husband claims periodic alimony should have been denied because he had previously transferred to the wife assets totalling $216,000.00. These included the proceeds of the second mortgage on the Church Street house, $6,000.00 proceeds from the sale of the wife's Cadillac, $9,000.00 forwarded to the wife from a personal loan the husband obtained, a $46,000.00 stock portfolio given to the wife shortly after the inheritance, and the proceeds from the sale of the Church Street house given to the wife under the temporary order. He argues the transfer of these assets amounted to an award of lump sum alimony and he should be relieved from any further alimony obligation. Alternatively, he requests lump sum alimony be awarded in a small sum with credit for these previous transfers. To support this argument the husband claims the wife "entirely exhausted the husband's $800,000.00 inheritance (albeit partially with his acquiescence) in a period of eight years."

The trial court considered the propriety of awarding lump sum alimony in this case, despite the fact that it had not been prayed for, nor had the elements been proven at trial. As the trial judge noted, our courts have consistently held that lump sum alimony can only be awarded "where special circumstances require it or make it advisable, and an award of a lump sum as permanent alimony should be supported by some impelling reason for its necessity or desirability." *Mil-*

*lis v. Millis,* 282 S. C. 610, 612, 320 S. E. (2d) 66, 67 (Ct. App. 1984). The court concluded since no special circumstance existed to warrant lump sum alimony, it could only award the wife periodic alimony.

The court did, however, enumerate and consider in its award the assets previously awarded to the wife. The court also considered the factors set forth in *Lide v. Lide,* 277 S. C. 155, 283 S. E. (2d) 832 (1981) and *Nienow v. Nienow,* 268 S. C. 161, 232 S. E. (2d) 504 (1977). Accordingly, the court noted the wife was 47 years of age, had never earned more than $14,000.00 per year in clerical jobs, had a high school diploma, had enjoyed a high standard of living with the husband which, admittedly, had to be adjusted, and currently had no income but expenses of $4,369.00 per month. The husband, while listing no income on his financial declaration, testified he would be able to earn a minimum of $50,000.00 per year as a novelist, or he would seek other employment.

An award of alimony rests within the sound discretion of the trial judge and will not be disturbed on appeal absent a showing of abuse of discretion. *Nienow v. Nienow, supra; Sumter v. Sumter,* 280 S. C. 94, 311 S. E. (2d) 88 (Ct. App. 1984). In divorce cases this Court has jurisdiction to find facts in accordance with our own view of the preponderance of the evidence. *Shafer v. Shafer,* 283 S. C. 205, 320 S. E. (2d) 730 (Ct. App. 1984). Based on the findings of the trial judge and our own review of the record, we find no abuse of discretion by the trial judge in refusing to award lump sum alimony to the wife and in awarding her $1,200.00 monthly periodic alimony. The record amply demonstrates the spending habits of both parties dissipated the inheritance. The husband has a degree from Oxford University, testified he can earn at a minimum $50,000.00 per year as a novelist, testified at trial he should inherit the proceeds of another trust from his mother in an amount close to $1,000,000.00, has an expectancy in another trust worth three to five million dollars, and is entitled to proceeds from the sale of some real estate in Great Britain. The husband failed to demonstrate why an award of lump sum alimony should be more appropriate in this case than the periodic alimony award.

The husband alternatively argues this is an appropriate case for rehabilitative alimony. We find no evidence in the record to support this claim. There is no indication the wife, now almost fifty years old, could successfully complete any further training to acquire new job skills, or that she would achieve success in the job market in an amount sufficient to completely support herself. *Eagerton v. Eagerton*, 285 S. C. 279, 328 S. E. (2d) 912 (Ct. App. 1985). She testified at trial that her recent job searches indicated she could expect to earn $11,000.00 per year, and the trial judge found her capable of earning between $12,000.00 and $16,000.00 per year. The evidence, as indicated above, demonstrates the husband's capability to provide the wife with periodic alimony of $1,200.00 per month. We reject the husband's argument that this is an appropriate case for rehabilitative alimony.

The husband next argues the trial judge erred in finding his adultery to be the primary reason for the breakup of the marriage and then considering the husband's fault in arriving at the alimony award. The conduct of the parties is a factor to consider in determining alimony. *Nienow v. Nienow, supra; Lide v. Lide, supra.* The husband admitted committing adultery with two persons, the first time in June 1985 following his March 1985 request for a divorce. He also admitted meeting his paramour, a former girlfriend, in March 1985 and becoming romantically involved with her in May of that year. We reject the husband's contention that the judge's finding is without evidentiary support, and find no error amounting to an abuse of discretion in the judge's finding that the husband's adultery was the primary reason for the marital breakup.

The husband next alleges the judge should have found the wife at fault in failing to exercise the option on the New York apartment, resulting in a loss of the $88,000.00 option price. He claims the wife's substantial economic waste as illustrated in this instance and others negates the judge's finding that the wife contributed $23,000.00 to the marriage in the form of the equity from the sale of her Washington condominium which was used to purchase the Church Street house. He argues, conversely, that the wife's economic contribution to the marriage was

substantially negative, so that the judge's finding of the wife's positive economic contribution in determining the alimony award was in error.

As we have previously stated, the record reveals both parties were at fault for extravagant spending habits and improper money management. The record reveals, moreover, that both parties were at fault in losing the option on the New York apartment. This was a joint undertaking in contemplation of a move from Charleston. Although he may have agreed to this venture reluctantly, the husband nevertheless by his own testimony agreed. He admits the equity eventually realized from the sale of the Church Street house was insufficient to exercise the option on the New York apartment. We reject this argument.

Finally, the husband claims the judge erred in basing ■ the award of alimony on the husband's estimated earning capacity. The judge found, based on the husband's testimony and his own findings, that the husband was capable of earning $50,000.00 per year as a novelist. The husband testified at trial that he believed he was capable of earning and will earn in the future $50,000.00 per year, adding, "if I did not think that I could earn fifty, I would seriously think of doing something else." The record reveals the husband has an excellent education and had a respectable career as a journalist prior to becoming a novelist. At the time of the hearing he had an offer to publish his second novel and was shopping for a more lucrative contract. As we have indicated, he stands to inherit substantial amounts of money. We find no abuse of discretion in the judge's finding the husband was capable of earning $50,000.00 per year.

Since we find no merit to the husband's arguments regarding the award of $1,200.00 monthly periodic alimony to the wife, the alimony award is affirmed.

## ATTORNEY FEES

The husband alleges the judge erred in awarding the ■ wife $4,500.00 attorney fees. The court found the wife's attorney fees totalled $12,568.61, of which she had paid $5,607.00 and owed $6,961.61. It is elementary that an award of attorney fees is discretionary with the trial judge. *Nienow v. Nienow, supra.* The court considered the

factors enumerated in *Nienow* to justify such an award, and found the hourly rate consistent with that customarily charged for that type of legal service by attorneys with the standing and ability of the wife's attorneys. It also found the hours claimed consistent with the time devoted to the case through depositions and other discovery and research. The record reveals the beneficial results obtained for the wife through temporary support, and in receiving a divorce on the ground of adultery and periodic alimony. The record also reflects the husband's ability to pay the fees and the wife's inability to so pay. We therefore affirm the attorney fee award.

## MARITAL DEBTS

Finally, the husband argues the judge erred in apportioning the marital debt. The judge ordered the wife to pay $10,607.87 in debts listed on her financial declaration and the husband to pay his debts listed at $30,900.00. The husband argues this is unfair because the figure listed on the wife's financial declaration included attorney fees, of which the husband was ordered to pay $4,500.00. He also argues the judge failed to consider the husband owes his publisher $25,500.00 from the advance on his book, and owes his mother $65,000.00 from an unsecured loan. He also argues the judge failed to consider the wife received $8,900.00 from the husband's $18,000.00 loan from South Carolina National Bank, and that the wife incurred the charges on the American Express account, both of which are debts listed on his financial declaration. We reject these arguments.

Marital debts are a factor to be considered by the court in determining equitable distribution. *Shaluly v. Shaluly*, 284 S. C. 71, 325 S. E. (2d) 66 (1985). The court may employ any reasonable means to effectuate division of the spouse's property. *Taylor v. Taylor*, 267 S. C. 530, 229 S. E. (2d) 852 (1976). Much discretion in this division is permitted, and the judge is not required as a matter of law to order the sharing of debts. *Levy v. Levy*, 277 S. C. 576, 291 S. E. (2d) 201 (1982). Regarding attorney fees, the judge properly and separately ordered the husband to pay $4,500.00. The judge obviously intended for the wife to absorb all of the remaining debt on her financial declaration.

The debts to his publisher and his mother do not appear on the husband's financial declaration. The "debt" to the publisher will be repaid from book sales in the customary manner, and the existence of a "debt" to his mother is dubious. Evidence of the circumstances of the SCN loan and the American Express account was before the trial judge. Based on the ability of the parties to pay these debts, we find no abuse of discretion by the judge.

For the foregoing reasons, the judgment appealed from is

Affirmed.

GARDNER and SHAW, JJ., concur.