2408

David J. HICKUM, Appellant v. Judy B. HICKUM, Respondent.
(463 S.E. (2d) 321)

Court of Appeals

*Hal J. Warlick,* of *Warlick Law Office,* Easley, *for appellant.*

*Kenneth C. Porter,* of *Porter & Resenfeld,* Greenville, *for respondent.*

Submitted Oct. 3, 1995.

Decided Oct. 30, 1995.

HEARN, Judge:

In this domestic action, husband appeals the date of valuation of marital estate, the equitable apportionment of the parties' marital debt, the valuation of the wife's cosmetic business, alimony, and the inclusion of the parties' retirement plans in the marital estate. We affirm.[1]

The parties married on July 20, 1963, and have one emancipated child. They separated in March of 1992 after wife discovered husband's adulterous relationship with a woman named Beth.[2] Wife filed an action for divorce on the ground of adultery on October 19, 1992. A *pendente lite* order was signed on November 23, 1992, in which husband was ordered to pay $400.00 per month towards satisfaction of a home equity loan on the marital residence. Pursuant to the administrative rules of the family court, the October 19 action was dismissed because it was not brought to trial within 270 days from the date of filing. FC ADMIN-5 (S.C. Sup. Ct. filed June 5, 1992). On September 20, 1993, husband filed for divorce on the ground of one year continuous separation. Wife counterclaimed for divorce based on adultery, and sought equitable apportionment of the marital estate, alimony and attorney's fees. The trial judge granted wife a divorce on the ground of adultery. The trial judge also ordered a fifty-fifty division of the marital property, which she identified and valued as of September 20, 1993, and awarded wife permanent, periodic alimony of $475.00 per month and attorney's fees. Husband appeals.

## I.

Husband contends the trial judge erred when she included the parties' retirement plans in the marital estate. We disagree. In applying S.C. Code Ann. § 20-7-473 (Supp. 1994) this court held: "Since retirement plans were not excluded by the act, retirement plans are therefore includable as marital property subject to division." *Ferguson v. Fer-*

---

[1] Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument.

[2] The Husband admitted he had had sex with Beth in the marital home while the Wife was at work. At the time of the final hearing, the Husband and Beth had been living together for about a year.

*guson,* 300 S.C. 1, 386 S.E. (2d) 267 (Ct. App. 1989). Accordingly the trial judge properly considered the parties' respective retirement plans as marital property subject to equitable apportionment.

## II.

Husband contends the family court judge erred in ruling that the filing date of the second action, September 20, 1993, was the operative date for identifying and valuing the marital estate. He argues that the marital litigation between these parties began on October 19, 1992, the date the wife commenced the prior action, and that the marital estate should be valued as of the date of separation.[3] In a related argument husband asserts that any property acquired by either party subsequent to the entry of the *pendente lite* order in the prior action should have been excluded from the marital estate pursuant to § 20-7-473(2). Therefore, the husband contends, the family court judge overvalued several marital assets, including husband's retirement account which increased from $116,944.73 to $129,047.99 from December 31, 1992, until September 20, 1993.[4]

Appellant's argument that the trial judge erred in using the second filing date for valuation purposes has been rejected previously by this court. In *Shannon v. Shannon,* 301 S.C. 107, 112, 390 S.E. (2d) 380 (Ct. App. 1990), this court interpreted § 20-7-473 and held the kind of litigation required "to trigger the statute must be the same litigation which brings about the equitable division." In refusing to link valuation to the filing date of a prior action between the parties, the court noted: "It is not enough that the parties in the past engaged in some litigation if that litigation did not serve as the vehicle for equitable division." *Id.*

The reasoning of *Shannon,* which furthers this State's public policy of preserving marriages, in applicable here. The operative litigation which "triggered" S.C. Code Ann. § 20-7-473 brought about the equitable division was obviously the litiga-

---

[3] In support of this proposition, Appellant relies on cases decided prior to the effective date of the Equitable Apportionment of Marital Property Act.

[4] This court is somewhat confused by the husband's argument that the retirement account should have been valued as of December 31, 1992, an arbitrary and irrelevant date in relation to the divorce action.

tion which began on September 20, 1993, not the prior stricken litigation. Therefore, the family court judge correctly ruled that the marital assets should be valued as of September 20, 1993.

Husband also contends certain property should have been excluded from the marital estate because it increased in value or was "acquired" after the entry of the *pendente lite* order in the prior litigation. We disagree.

Section 20-7-473 defines marital property as all real and personal property acquired by the parties during the marriage and owned as of the date of filing or commencement of marital litigation. Subsection (2) of the statute creates an exception for property acquired after the entry of a *pendente lite* order and designates such assets as nonmarital property. While husband's argument that the *pendente lite* order in the prior, nontriggering action should operate to exclude certain property from the marital estate is an ingenious one, we reject it.

Section 20-7-473 is the vehicle which creates "marital property" to be equitably divided by the family court.

While a litigant's ownership right in marital property is acquired during the marriage, " '[m]arital property' as such does not exist until the date when marital litigation is filed or commenced." *Prosser v. Pee Dee State Bank*, 295 S.C. 212, 214, 367 S.E. (2d) 698 (1988). Accord, *Hopkins v. Hopkins*, 295 S.C. 239, 367 S.E. (2d) 714 (Ct. App. 1988). Thus, the "marital property" at issue here did not exist until September 20, 1993, at the time of the filing of this action. It would be incongruous to hold, as husband suggests, that a temporary order in a prior action should limit the definition of what constitutes marital property in this case, when the marital property itself did not even "exist" under the law until September 20, 1993. To accept husband's argument would be to permit "the tail to wag the dog," and would result in inconsistency and confusion. It would also punish the wife who failed to pursue her divorce action and be contrary to this State's public policy.[5] Con-

---

[5] While the initial complaint filed by wife was stricken because she failed to proceed, we find no evidence she delayed the action in bad faith. Rather, she testified she hoped "time might save the marriage." However, family court administrative rules allow *either* party to restore a case struck from the docket upon written application showing good cause to the chief administrative judge. FC ADMIN-5 (S.C. Ct. filed June 5, 1992). There is no indication, however, that the husband moved to restore the prior action.

sistent with the prior case law interpreting the statute, we hold that the action which brings about the equitable division is not only the triggering action for purposes of the identification and valuation of marital assets pursuant § 20-7-473, but also the triggering action for any *pendente lite* order which operates to exclude assets from the definition of marital property under subsection (2). We note this construction of § 20-7-473 is also consistent with prior case law which holds that both parties are entitled to share in any appreciation in marital assets which occurs after the parties separate and before the parties divorce. *Smith v. Smith,* 294 S.C. 194, 363 S.E. (2d) 404 (1987).[6]

## III.

Husband also asserts the trial judge erred when she ordered him to pay the "Visa/shop debt" as part of the equitable apportionment of the parties' debts. S.C. Code Ann. § 20-7-472 (Supp. 1994) provides in pertinent part:

In making apportionment, the court must give weight in such proportion as it finds appropriate to all of the following factors: (13) liens and any other encumbrances upon the martial property, which themselves must be equitably divided, or upon the separate property of either or the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage; (15) such other relevant factors as the trial court shall expressly enumerate in its order.

Section 20-7-472 creates a presumption that a debt of either spouse incurred prior to marital litigation is a marital debt, and must be factored into the totality of equitable apportionment. The presumption is rebuttable. *Hardy v. Hardy,* 311 S.C. 433, 429 S.E. (2d) 811 (Ct. App. 1993).

"Marital debt" has been defined as debt incurred for the joint benefit of the parties regardless of whether the parties are legally jointly liable for the debt or whether one party is legally individually liable. *Id.* at 437, 429 S.E. (2d) at 813. Moreover, the estate which is to be equitably

---

[6] Since the assets at issue here were all in existence at the time the parties separated they were arguably outside the scope of subsection (2) because they were not "property acquired" after the entry of a *pendente lite* order.

divided by the family court judge is the net estate, i.e., provision for the payment of marital debts must be apportioned as well as the property itself. Therefore, basically the same rules of fairness and equity which apply to the equitable division of marital property also apply to the division of marital debts. *Id.*

The burden of proving a spouse's debt as nonmarital rests upon the party who makes such an assertion. If the trial judge finds that a spouse's debt was not made for marital purposes, it need not be factored into the court's equitable apportionment of the marital estate, and the trial judge may require payment by the spouse who created the debt for nonmarital purposes. However, the words, "in such proportion as it finds appropriate," as used in § 20-7-472, accord much discretion to the trial judge in providing for the payment of marital debts as a consideration in the equitable division of the marital estate. *Id.* On review, this court looks to the fairness of the overall apportionment. In light of the entire equitable distribution of the marital estate, we find no abuse of discretion in apportioning the "Visa/shop debt" to husband.

## IV.

Appellant further contends the trial judge erred when she considered the husband's live-in paramour's potential contributions to his household expenses when determining the amount of alimony awarded to wife. The trial judge's finding that the paramour "is or should be contributing to the joint household expenses that the husband is incurring" was simply a finding of fact and not directly related to the award of alimony. Rather, the trial judge stated she considered the factors as enumerated in S.C. Code Ann. § 20-3-130 (Supp. 1994). She specifically found wife's expenses as related to her income resulted in a substantial deficit, and to maintain the standard of living to which she was accustomed, husband was financially able and, therefore, should pay her alimony of $475.00 per month.

Alimony is a substitute for the support which is normally incident to the marital relationship. *Nienow v. Neinow*, 268 S.C. 161, 232 S.E. (2d) 504 (1977). Ordinarily, the purpose of alimony is to place the supported spouse, as nearly as is practical, in the position of support he or she en-

joyed during the marriage. *Johnson v. Johnson*, 296 S.C. 289, 372 S.E. (2d) 107 (Ct. App. 1988), *cert denied*, 298 S.C. 117, 378 S.E. (2d) 445 (1989). Wife worked outside the home during the entire marriage in addition to being the primary caretaker of the parties' child and providing domestic services to her family. Wife has a monthly income of $1,492.83. Husband earns $3255.00 per month. A ruling on alimony is discretionary. *Williamson v. Williamson*, 311 S.C. 47, 426 S.E. (2d) 758 (1993). We find no abuse of discretion in the award of alimony.

## V.

Husband contends the trial judge underestimated the value of wife's interest in a cosmetic business. Marital businesses are to be valued at fair market value as ongoing businesses. *RGM v. DEM*, 306 S.C. 145, 410 S.E. (2d) 564 (1991). The trial judge found the business to be worth $7,250.00, the value of the inventory. Therefore, wife's share, subject to equitable apportionment, was $3,625.00. Husband valued the business at $10,000.00. Husband contends the trial judge's valuation, based solely on the business's inventory, is inconsistent with the holding in *RGM v. DEM*. We disagree.

Wife and her sister opened a cosmetic business approximately eighteen to twenty years prior to this action.[7] They are equal partners. The business's 1993 tax return shows a profit of only $204.00. Wife testified she worked in the business as a "hobby." The 1993 tax returns showed the business inventory at the end of 1993 to be $7,250.00. Wife and sister rent the building which houses the business, and claim no other assets other than the inventory in the business.

Based on the unique nature of the wife's business, we find no error in the trial judge's valuation of the cosmetic business. *See Roe v. Roe*, 311 S.C. 471, 429 S.E. (2d) 830 (Ct. App. 1993) (the family court is given broad discretion in valuing the marital property, and this court will affirm a finding as to value which is supported by the evidence); *Woodward v. Woodward*, 294 S.C. 210, 363 S.E. (2d) 413 (Ct. App. 1987) (the family court's valuation of property will be af-

---

[7] Husband emphasizes the cosmetic business is "established" and, thus, should be valued higher. The courts of South Carolina have consistently held, however, the goodwill of a business is too speculative to be included in the marital estate. *Casey v. Casey*, 293 S.C. 503, 362 S.E. (2d) 6 (1987).

firmed if it is within the range of the evidence); *Smith v. Smith,* 294 S.C. 194, 363 S.E. (2d) 404 (Ct. App. 1987) (the family court may accept one party's valuation of marital property over those of the other party).

Affirmed.

CURETON, J., concurs and GOOLSBY, J., concurs in a separate opinion.

GOOLSBY, Judge (concurring):

I concur fully in Parts I, III, and IV of the majority opinion. I do not agree with the decision reached in Part II thereof that contributions made by a spouse after the entry of a pendente lite order in a divorce action to a retirement account and the increase in the value of the account attributed to those contributions and property acquired by a spouse after entry of a pendente lite order in a divorce action constitute marital property where the divorce action in which the pendente lite order was obtained did not result in the family court's equitably distributing the marital property. In other words, I do not agree with the majority's holding in Part II that property acquired by a spouse while a pendente lite order is in force constitutes marital property even when the action in which the order was obtained did not lead to an equitable division of the marital property. S.C. Code Ann. § 20-7-473 (Supp. 1994) plainly and unambiguously states that

> [t]he term "marital property" . . . means all real and personal property . . . acquired by the parties during the marriage and . . . owned as of the date of filing or commencement of marital litigation . . . *except* the following . . . :
>
> . . . .
>
> (2) property acquired by either party before the marriage and property acquired after the happening of the earliest of (a) entry of a pendente lite order in a divorce or separate maintenance action; (b) formal signing of a written property or marital settlement agreement; or (c) entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital

settlement agreement between the parties. (Emphasis ours.)

In brief, the General Assembly, judging from the clear and unambiguous language employed in section 20-7-473, intended that property acquired by a person in certain defined, similar instances is to be regarded as that person's sole property. These instances involve the acquisition of property either wholly outside of marriage or during marriage but when the parties no longer function economically as marital partners. *Cf. Walker v. Walker*, 295 S.C. 286, 288, 368 S.E. (2d) 89, 90 (1988) ("Equitable distribution is based on a recognition that marriage is, among other things, an economic partnership."); L. Golden, *Equitable Distribution of Property*, § 5.12 p. 106 (1983) ("[W]hen the parties cease to contribute to the joint enterprise, when the partnership no longer exists, the rationale for equitable distribution is no longer cogent.").

As to property acquired after the entry of a pendente lite order, the General Assembly did not exempt from the definition of the term "marital property" only that property acquired by a party after entry of a pendente lite order in the divorce or separate maintenance action that "commenc[ed] [the] marital litigation," *i.e.*, the litigation that leads to a property division. *See Shannon v. Shannon*, 301 S.C. 107, 390 S.E. (2d) 380 S.E. (2d) 380 (Ct. App. 1990) (defining what constitutes "commencement of marital litigation").[1] Rather, it exempted

---

[1] I do not agree with the majority's a reliance on *Shannon* because that case did not address the exceptions contained in S.C. Code Ann. § 20-7-473 (Supp. 1994). Rather, it only interprets the meaning of the phrase "commencement of marital litigation," concluding that "the kind of marital litigation required to trigger the statute must be the same litigation which brings about the equitable division." *Id.* at 112, 390 S.E. (2d) at 383.

One other thing I do not agree with. I believe the majority's decision does not further this state's public policy of preserving marriages and encouraging reconciliations. It hinders that policy. For example, a husband who acquired assets after the entry of a pendente lite order in a divorce action brought by his wife and who, after the action was stricken from the docket pursuant to FC ADMIN-5 (S.C. Sup. Ct filed June 5, 1992) for failure of the wife to prosecute, chose not to rescue his marriage and moved to restore the case to the family court docket *would not* suffer an automatic decrease in the amount of his separate property as he *would* if he attempted to reconcile with his wife, elected not to move for a restoration of the case to the family court docket, failed in the reconciliation attempt, and thereafter brought an action for a divorce against his wife. In the former case, the assets acquired pendente lite would not be considered "marital assets," while in the latter case they would be so considered.

property that a party acquired after entry of a pendente lite order, regardless of whether the action "commenc[ed] [the] marital litigation," as *Shannon* defines that term.

Mr. Hickum, however, did not present this precise argument to the trial court; consequently, I concur in the result reached by the majority. *See Schofield v. Richland County Sch. Dist.* 316 S.C. 178, 447 S.E. (2d) 189 (1994) (an issue must be raised to and ruled upon by the trial court in order to be considered on appeal); *White v. Livingston*, 231 S.C. 301, 98 S.E. (2d) 534 (1957) (one cannot present and try his case on one theory and then thereafter advocate another theory on appeal).